FILED

UNITED STATES DISTRICT COURT

2022 JAN 31  PM 2: 15

MIDDLE DISTRICT OF FLORIDA

CLERK. US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

COREY DAVIS,
    Plaintiff,

Case No 5:22-cv-57-RBD
                              PRL

V.

FEDERAL BUREAU OF PRISONS,
WARDEN, United States Penitentiary
Coleman I (as an individual and in
his official capacity), UNKNOWN
SPECIAL INVESTIGATIVE SERVICES
OFFICER, United States Penitentiary
Coleman I (as an individual and in
his official capacity), CAPTAIN
JONES, United States Penitentiary
Coleman I (as an individual and in
his official capacity),
        Defendants.

CIVIL COMPLAINT

Jury Trial Demand

## PRELIMINARY STATEMENT

Plaintiff Corey Davis is a Pro Se litigant currently immured at United States Penitentiary Coleman I. Mr. Davis has been confined in the Special Housing Unit continuously for ten months. He brings this vital action without the benefit of legal or research materials. As a lay-person in the law, Mr. Davis respectfully requests the Court

(1)

apply the provisions set forth in _Haines v. Kerner_, and construe this this Complaint to raise the strongest, and most meritorious claims for relief.

## I. PARTIES

### The Plaintiff

1. Plaintiff, Corey Davis, Pro Se, is currently immured at United States Penitentiary Coleman I, located at 846 N.E. 54th Terrace Coleman, Florida 33521

### The Defendants

2. Defendant, Federal Bureau of Prisons is an agency of the United States Department of Justice, its central office is located at 320 First Street NW, Washington, D.C. 20534.

3. Defendant, Warden Antonelli is employed by the United States Department of Justice as Warden of United States Penitentiary Coleman I at 846 N.E. 54th Terrace Coleman, Florida 33521. He is being sued in his individual and official capacity.

4. Defendant, Unknown S.I.S. Officer is employed by the United States Department of Justice as a correctional officer at United States Penitentiary Coleman I at 846 N.E. 54th Terrace, Coleman, Florida 33521. He/She is being sued in his/her individual and official capacity.

(2)

5. Defendant, Captain Jones is employed by the United States Department of Justice as Captain at United States Penitentiary Coleman I at 846 N.E. 54th Terrace, Coleman, Florida 33521. He is being sued in his individual and official capacity.

## II. JURISDICTION

6. Plaintiff brings this suit pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against federal officials for violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, deliberate indifference, negligence, civil conspiracy, and failure to supervise while acting under color of law. As these violations occurred at United States Penitentiary Coleman I within this District, and elsewhere, jurisdiction and venue properly lie in this Court.

## III. STATEMENT OF CLAIM

7. On December 19, 2008, Corey Davis, hereafter "Plaintiff", was convicted of one count of sex trafficking of a minor, 18 U.S.C. § 1591 (a). As provided by law Plaintiff was sentenced under the Walsh Act and designated a sex offender. This designation is articulated in Plaintiff's Pre-Sentence Investigation Report and in his Judgement and Commitment Order.

8. During its pendancy of Plaintiff's criminal case received a tremendousdous amount of media coverage, including articles in the New York Times and Washington Post. Since Plaintiff's conviction he has exhausted his avenues of appeal. These court cases are published and available to the public as well as accessible on the Nexis Lexus legal computer inmates use in the Federal prison system to conduct legal research.

9. On December 19, 2019, Plaintiff was transferred from FCI Hazelton to Federal Medical Center Butner. Plaintiff was to undergo arthroscopic surgery to repair the torn anterior Cruciate ligament (ACL) in his left knee. As a pre-cursor, in January of 2021, he underwent an invasive procedure on the knee where his bones were "bled" by having multiple holes drilled into the knee and allowed to bleed to promote healing.

10. It was this surgery Plaintiff was recovering from when, on March 2, 2021, he was placed in the Special Housing Unit (SHU) at FMC Butner. Plaintiff had completed only three (3) of the prescribed twelve (12) weeks of rehabilitative physical therapy required before he was to have ACL surgery. Plaintiff has not received any medical attention, at all, since March 2021. His left knee is still painful and unstable.

11. Plaintiff was transferred to USP Coleman 1 on August 12, 2021. Upon his arrival Plaintiff was screened by Special Investigative Services, hereafter "S.I.S.". During the interview an S.I.S. investigator asked Plaintiff if there was any reason he should

(4)

not be admitted into General Population (G.P.). Plaintiff responded, "Yes, I have a sex trafficking conviction. This is an active yard, I won't be safe out there."

12. The S.I.S. officer replied, "I understand, I don't know why they didn't send you next door."

13. USP Coleman is part of a complex consisting of four prisons. "Next door" is USP Coleman 2 which is one of at least four protective custody united states penitentiaries the Bureau of Prisons established to house inmates who have cooperated with law enforcement, sex offenders, and gang dropouts. All individuals who cannot be safely housed at an "active" penitentiary.

14. On August 12, 2021, Plaintiff was assigned to M Unit for quarantine. On September 17, 2021, he was moved from there to the SHU. On September 27, 2021, Plaintiff was ordered by a SHU staff member to enter General Population. Citing that it would jeopardize his safety, Plaintiff refused Plaintiff was issued Incident Report number 3551259 for Refusing A Job Assignment/Program in violation of B.O.P. Prohibited Act (306).

15. At the time of Plaintiff's refusal the staff member ordering him into G.P. explained to him that he have to refuse G.P. three (3) times before he would be considered by his Unit Team (Case Manager and Unit Manager) for a transfer to another institution. The SHU staff member told Plaintiff there would be thirty (30) days between the orders to enter G.P. and he should expect to be in the SHU for at least six (6) months. The ordinary transfer process takes six to eight

(5)

weeks.

16. On or about August 28, 2021, Plaintiff was served with the Incident Report by SHU Lieutenant Perkins. He asked Lt. Perkins why he was being ordered into G.P. when it was obviously a threat to his safety. Lieutenant Perkins informed Plaintiff that he didn't know and Plaintiff would need to speak to S.I.S. because S.I.S. had deemed him "un-verified." This means S.I.S. determined it was safe for Plaintiff to be in General Population.

17. Plaintiff subsequently wrote S.I.S. via the Inmate Request To Staff procedure, twice asking that someone from that department speak with, and or write Plaintiff explaining upon what basis S.I.S. found it was safe for Plaintiff to enter G.P. given the politics of the prison and the nature of Plaintiff's conviction. Inmate Requests to staff, per B.O.P. policy are to be responded to within five (5) business days. S.I.S. never replied to Plaintiff's requests.

18. On or about October 7, 2021, Plaintiff sent an Inmate Request to Warden Antonelli making the same request. That Inmate Request was not responded to.

19. On October 11, 2021, while making his weekly rounds in the SHU, Unit Manager Ortiz spoke with Plaintiff. Again, Plaintiff inquired how he could be ordered into G.P. Unit Manager Ortiz told Plaintiff he would speak with S.I.S., but asked Plaintiff to send a follow up/reminder Inmate Request to him. On October 18, 2021, Plaintiff submitted that request

(6)

via his Unit Counselor, Mr. Hernandez. This request was not responded to.

20. On October 18, 2021, Plaintiff spoke with his Case Manager, Mr. Dauchise, about Plaintiff being deem "unverified" by S.I.S., receiving an incident report, and the potential of Plaintiff having to spend six months in the SHU. He asked Case Manager Dauchise, "Why would I be forced into population when S.I.S. knows I'll be assaulted as soon as my charge is known?"

21. Mr. Dauchise responded, "If they don't have a specific threat that someone intends to harm you then they clear you to go out."

22. Plaintiff replied, "So I should go out there and get hurt, or possibly killed in order to earn verification?"

23. Case Manager Dauchise said, "Unfortunately, yes. And it would probably get you transferred a lot faster."

24. Plaintiff told Mr. Dauchise, "That's insane."

25. Mr. Dauchise responded, "I agree." He then informed Plaintiff that he would likely be transferred to two more "active" penitentiaries before he would be recommended for a transfer to a protective custody penitentiary. Thus meaning Plaintiff would spend the next 18 to 24 months in various SHU's as opposed to being transferred directly to a prison commensurate with his conviction and security needs.

26. Also on October 18, 2021, Plaintiff submitted an Inmate Request to the Captain of USP Coleman 1, Mr. Jones, which stated, in part:

> My case received a tremendous amount of publicity which is readily available on the internet. My case has been heavily litigated and is all over the legal computer inmates use. Clearly this is not an appropriate yard for me. I asked you to look into how S.I.S. could deem me unverified and order me into G.P. Even if there is no specific threat, my conviction, my PSI, age and physical condition pose a significant and real threat to my health, life, and liberty. This is plain common USP knowledge.

This Inmate Request, as did all the others, went without a response.

27. On October 27, 2021, Plaintiff was again given an order to enter General Population by SHU Correction Officer J. Martin. Again, Plaintiff refused. Plaintiff told Officer Martin, "I fear for my safety." Officer Martin subsequently wrote Plaintiff an Incident Report, numbered 3561416, for REFUSING WORK/PROGRAM ASSIGNMENT, in violation of Prohibited Act code 306.

28. Shortly thereafter Counselor Hernandez conducted Plaintiff's Unit Disciplinary Committee hearing, alone, on 8-Range in the SHU. Mr. Hernandez again found Plaintiff guilty of

committing Prohibited Act 306. Plaintiff was sanctioned the loss of the Trulincs computer for 30 days.

29. On December 6, 2021, as correction officer J. Martin originally informed Plaintiff back on September 27, 2021, Plaintiff was given a third order to enter General Population, again at an extended interval, by Lieutenant G. Kitchen. And once again, citing legitimate concerns for his well-being, Plaintiff refused.

30. Plaintiff was issued Incident Report number 3574299 for REFUSING WORK/PROGRAM ASSIGNMENT in violation of Prohibited Act Code 306. On December 16, 2021, Plaintiff had a disciplinary hearing. He was found guilty and the Disciplinary Hearing officer issued severe sanctions; the loss of 27 days Good Conduct time, 90 days loss of visitation privileges, and 90 days loss of commissary privileges.

31. This Bivens action follows.

## FEDERAL PENITENTIARIES ARE RUN BY INMATE POLITICS

32. With prison authorities' full knowledge, cooperation, and at times promotion, federal penitentiaries are segregated into groups that dictate the "politics" of the inmate population. These groups are various gangs and "cars" (men who associate, most often based on their home locales, common religion or nationality). The politics are the de facto rules of self-governance that are established and adhered to by

inmates. Chief among these rules is that sex offenders and law enforcement cooperators are not permitted to remain in General Population. The subtext of this rule is that these individuals are to be removed from G.P. by acts of violence.

33. Inmate politics dictate that a newly arriving inmate into G.P. must produce their case documents disclosing the details of their conviction. These documents include, but are not limited to, an inmate's PSI, Judgement and Committment order, and Sentencing Hearing transcript. If an inmate does not produce these documents to his gang/cor, fellow inmates begin to look up the new inmate on the Nexus Lexis legal computer all inmates have access to. In addition, inmates utilize community contacts to perform internet searches for them to gain information on the new inmate's case history.

34. As court records are public information it is impossible for the details of a USP inmate's conviction to go undiscovered. This makes it equally impossible for individuals like Plaintiff (classified as sex offenders) to rehabilitate unscathed at "active" U.S. penitentiaries. Plaintiff obviously cannot show his case documents which would only create immediate scrutiny, inevitably leading to discovery of Plaintiff's sex offender status, and his assault

34. This aspect of "active" United States Penitentiary "politics" is common knowledge amongst USP inmates, staff, and Federal Bureau of Prisons officials. It cannot, honestly,

be disputed to exist in de facto policy and practice. As a
result, inmates convicted of sex offenses are routinely
beaten, stabbed, extorted, sexually assaulted and have even
been killed after being placed in General Population on "active"
United States Penitentiary yards.

35. In this base, it is reasonably foreseeable that Plaintiff
not only could be subjected to violence if he were to
enter General Population on an active USP yard but, per
inmate politics, will be assaulted.

36. Nevertheless, despite this clear and imminent danger, the
Defendants, and each of them, did agree to place Plaintiff
in General Population at United States Penitentiary Coleman 1,
an "active" penitentiary.

### PETITIONER'S PRESENCE IN GENERAL POPULATION POSES AN IMMINENT THREAT TO HIS SAFETY AND LIBERTY

37. Plaintiff's conviction and designation as a sex offender
places him among the categories of inmates who are, per
prison politics, not able to serve their prison sentences
safely in General Population at "active" Federal penitentiaries.
It would be masochistic to present his case documents and
the Nexus Lexis prison legal computer is replete with the
details of Plaintiff's conviction.

38. Currently, there are no mechanisms set in place by the B.O.P.

(11)

to prevent Plaintiff from being subjected to severe violence if he were to enter General Population at any "active" USP. Defendants Antonelli, Unknown S.I.S. officer, and Captain Jones Know this. Yet, in deliberate indifference, sadism, and discrimination due to the nature of Plaintiff's offense these Defendants caused Plaintiff to be ordered to enter General Population at USP Coleman I.

39. If Plaintiff were to enter G.P., to a <u>one hundred percent</u> <u>certainty</u>, he would be asked to show his case documents. Plaintiff would then have only three lawful options: 1) Refuse to present them which would lead to immediate assault, or eventual assault, as the refusal would raise suspicion among other inmates who will, to a <u>one hundred percent certainty</u>, look Plaintiff up on the prison legal computer, and or internet via friends or family and discover the nature of his conviction; 2) Present his documents which, as stated above, would be masochistic. He would immediately be physically assaulted due to his conviction, or; 3) Report the inmates requesting to see the documents to prison authorities. This might enable prison staff to discipline the demanding inmates, however would do nothing to safeguard Plaintiff's person.

40. Plaintiff would be cast into another category of inmates who, per inmate politics, are required to be removed from G.P. by violence. Plaintiff would be known as a snitch and subject to the same violence he would for it being known he is classified a sex offender.

41. All Defendants know, and or should know, there is no safe way

(12)

for Plaintiff to serve his sentence at USP Coleman I, or any other "active" Federal penitentiary.

42. Defendants Unknown S.I.S. Officer, Captain Jones, and Warden Antonelli have knowingly and willfully conspired to have Plaintiff assaulted. Unknown S.I.S. officer is responsible for conducting a threat assessment to determine if Plaintiff's request for protective custody is legitimate. Defendant Unknown S.I.S. officer negligently and or purposely determined it was safe for Plaintiff to enter General Population.

43. This determination was then forwarded to Defendant, Captain Jones and Defendant Antonelli for their review. Both defendants have many years experience working in federal penitentiaries and know Plaintiff's presence in General Population poses an ordinary risk to his safety. Yet, out of negligence and or deliberate indifference to punish Plaintiff for the nature of his conviction, both Defendants Jones and Antonelli endorsed Unknown S.I.S. officer's threat assessment, thereby causing Plaintiff to be ordered to enter General Population.

44. Defendants, and each of them, have also attempted to deprive Plaintiff of his liberty. If during the inevitable assault
Plaintiff
Petitioner would suffer, Plaintiff defends himself to prevent serious injury or death, Plaintiff would be given an incident report for fighting. The B.O.P. has no provision in its Policy Statement for self-defense. Therefore, whether Plaintiff is attacked by one person with fists, or a

group of inmates with Knives or other jailhouse weapons,
if Plaintiff throws a single punch to preserve himself
he would be cited for fighting

45. Prohibited Act Code (227) Fighting carries as a sanction the loss
of 27-41 Good Conduct Time days upon a finding of guilt at a disciplinary
hearing. As Plaintiff's assault is certain, and self-defense
unavailable to him, Plaintiff's presence in General Popu-
lation at USP Coleman-1, or any other "active" USP poses
a real and imminent threat to increase Plaintiff's time
in prison.

46. By designating Plaintiff to an "active" USP Defendant
Federal Bureaus of prisons did knowingly and intentionally
attempt to deprive Plaintiff his liberty. By ordering Plaintiff
into General Population at USP Coleman1, Defendants Antonelli,
Jones, and Unknown S.I.S officer did knowingly and inten-
tionally attempt to deprive Plaintiff his liberty.

B.O.P AND S.I.S. DECISIONS TO PLACE
PLAINTIFF IN GENERAL POPULATION AT
AN ACTIVE UNITED STATES PENITENTIARY IS
CONSTITUTIONALLY VIOLATIVE.

47. Plaintiff, Corey Davis, 49 years, in debilitated physical
condition, and a designated sex offender, should never
have been designated nor transferred to USP Coleman1.
Plaintiff's conviction and the information readily available
in the public regarding its nature singularly disqualifies

(14)

Plaintiff from being suitable for designation by the B.O.P. into General Population at any "active" penitentiary. His age and currently, severely compromised physical health makes this designation egregious.

48. Defendant Federal Bureau of Prisons was fully aware of Plaintiff's torn ACL prior to designating and transferring him to USP Coleman 1. Plaintiff should have remained at Federal Medical Center Butner until he had his surgery and was healthy or, Plaintiff should have been transferred to another hospital where the necessary surgery could be perform. Defendant Federal Bureau of Prisons intentionally, and or, neglectfully eschewed its duty to provide Plaintiff adequate medical care and protection.

49. The B.O.P. designation notwithstanding, upon Plaintiff's arrival at USP Coleman 1 Defendant Unknown S.I.S. Officer was duty-bound to diligently investigate Plaintiff's case history as well as his health. This investigation was eschewed or its facts ignored by the defendant. It is not possible for S.I.S., performing its function competently and unbiased, to have determined Plaintiff does not run an unordinary risk of victimization in General Population at USP Coleman 1.

50. Defendants Antonelli, Jones, and S.I.S. knowingly and intentionally decline to afford Plaintiff "verified" status for the purpose of causing him to be victimized in G.P. at USP Coleman 1. Alternatively, they were all negligent in their duties to protect Plaintiff's person and liberty.

(15)

51. The Defendants, and all of them, knowing and intentionally agreed to order Plaintiff into C.P. violating his constitutional right to be free from, and the daily terror of, assault.

## THE B.O.P HAS UNCONSTITUTIONALLY WEAPONIZED THE PROTECTIVE CUSTODY TRANSFER PROCESS

52. Plaintiff has been ordered into C.P. three times, each at a minimum of thirty day intervals. He has been in the USP Coleman SHU for four months and, as threatened, will likely spend at least six months there. It has been explained to him by Coleman staff that, as part of this pre-planned scheme, Plaintiff will probably be transferred to two additional "active" penitentiaries before Plaintiff will be designated by Defendant, Federal Bureau of Prisons, to a prison commensurate with his inmate characteristics, i.e., a protective custody USP.

53. This transfer scheme, in Plaintiff's instance, is blatantly unconstitutional.

54. Placing Plaintiff on what can be fairly described as the "USP refusal carousel", portends to have Plaintiff languish in the Draconian and debilitating conditions of solitary confinement for 18 to 24 months, solely due to the nature of his conviction and refusal to "earn" verification by venturing his safety and liberty.

(16)

55. To pre-plan the issuance of orders for Plaintiff to enter General Population at 30 day intervals is abusive. In doing so, the Defendants, and each of them, are punishing Plaintiff for asserting a legitimate concern for his safety. Defendants have improperly ensured Plaintiff will spend at least 6 months deprived the rights and privileges afforded inmates in G.P.

56. The next part of the scheme at USP Coleman 1, and elsewhere, that cause Plaintiff to be transferred twice more to "active" penitentiaries, and then placed on the same carousel at those institutions is a gross violation of the Constitution's prohibition of cruel and unusual punishment.

57. Plaintiff arrived at USP Coleman 1, he refused to enter General Population. Plaintiff was initially ordered into G.P. on September 27, 2021. None of the Defendants have reason to believe subsequent orders will cause Plaintiff to risk his safety and liberty by complying. Once it becomes clear an inmate, in this instance Plaintiff, will not enter G.P., his transfer should be processed timely, in the normal manner. In Petitioner's case the 90 day scheme to be carried out at three consecutive "active" penitentiaries constitutes improper punishment. From the day he arrived, Defendants, and each of them, knew Plaintiff would not, and should not, enter General Population.

58. The Defendants' scheme whereby an inmate with legitimate security concerns is held in the SHU for 6 and up to 24 months is designed as a weapon to coerce and intimidate inmates into entering G.P. at their own peril. There is no legitimate

(17)

penological interest served by such a scheme. Without having committed a rules infraction Plaintiff portends to be in the SHU for 6 to 24 months.

59. SHU conditions are deplorable. Plaintiff is totally. Plaintiff is totally cut off from the outside world. Defendants Antonelli, Jones, and Unknown S.I.S. Officer deny inmates housed in the SHU a radio, newspaper, books or magazines. Plaintiff is not permitted hygiene items, including a toothbrush, anti-perspirant, lotion, nor adequate toilet paper and soap. Plaintiff's mother is suffering the onset of dementia/Alzheimer's Disease and his father prostate cancer. Still, Plaintiff has only been allowed use of the telephone once since arriving at USP Coleman 1.

60. The horrendous SHU conditions are unconstitutional and plainly disparate to the conditions of other, similarly situated inmates in violation of the Fourteenth Amendment. They are designed by all Defendants to be coercive and punitive, and act in conjunction with the pre-designed scheme to elongate Plaintiff's time in the SHU.

61. The most inane aspect of the Defendants' collective scheme is that, if Plaintiff entered General Population and was assaulted, he would then be considered by Defendant Unknown S.I.S. Officer, Antonelli, and Jones to have a "verified" threat to his person. Plaintiff would be transferred within 2 months to a Protective Custody penitentiary without being placed on the transfer carousel at two more "active" USP's.

(18)

THE S.I.S. THREAT ASSESSMENT PROCESS
IS APPLIED IN A DISCRIMINATORY MANNER

62. The Defendants, and each of them, requirement that sex
offenders, as Plaintiff is designated, provide S.I.S. with a
specific threat against their person in order to be "verified"
is disparate from other, similarly situated inmates seeking
protective custody.

63. Routinely inmates who drop out of gangs are provided "veri-
fied" status at USP Coleman 1, and other USPs, without being
able to point to a specific person who intends to harm them.
If the gang dropout debriefs — tells S.I.S. what he knows
about his and other gang activity — the inmate is given verified
status and transferred to a protective custody USP. This is
done because, given the nature of USP inmate politics, the
threat to a gang dropout is manifest.

64. The threat to a sex offender is equally self-evident. The
Defendants, Antonelli, Jones, and Unknown S.I.S. Officer
discriminated against Plaintiff as an individual and as a
member of a class of individuals, by demanding a higher
showing than gang dropouts to receive protective custody.

65. This is part of Defendants, and each of them, continuing
scheme that unconstitutionally presents Plaintiff with the
unenviable choice of either spending 6-24 months in
isolation, or "earning" his designation to a prison which is
commensurate with his characteristics, and where USP politics
dictate he belongs, by enduring an act of violence.

(19)

## IV. CLAIMS

66. <u>FIRST CLAIM</u>: Defendants, and each of them, did knowingly, and with malice and forethought, participate in a scheme designed to keep Plaintiff in the Special Housing Unit for an unconstitutional length of time. As a direct and proximate result of Defendants' actions, and each of them, Plaintiff has spent, and portends to spend, an unjustifiably long period suffering under the unconstitutionally harsh deprivations of the USP Coleman I Special Housing Unit, to wit: CRUEL AND UNUSUAL PUNISHMENT, EQUAL PROTECTION VIOLATION.

    (a) Plaintiff hereby incorporates by reference all factual state-ments and allegations in paragraphs 8, 11-36, and 42-43, and 45 through 65 as if fully set forth in this paragraph 66, subsection (a).

67. <u>SECOND CLAIM</u>: Defendants, and each of them, did know-ingly, and with malice and forethought, conspire, agree, and/or confederate together, and with others, to classify Plaintiff in a manner designed to ensure Plaintiff spends 18-24 months suffering under the unconstitutionally harsh deprivations of the USP Coleman I, and other subsequent Special Housing Units at "active" United States Penitentiaries. As a direct and proximate result of each Defendants actions Plaintiff has been in the USP Coleman I SHU for more than four months and informed he will be transferred to two more "active" penitentiaries, to wit: CONSPIRACY, CRUEL AND UNUSUAL PUNISHMENT, EQUAL PROTECTION VIOLATION, DUE PROCESS VIOLATION.

    (a) Plaintiff hereby incorporates by reference all factual statements and allegations in paragraphs 8 through 65,

as if fully set forth in this paragraph 67, subsection (a).

68. *THIRD CLAIM*: Defendant Unknown Special Investigative Services Officer did knowingly and intentionally decline to provide Plaintiff protective custody status. As a direct and proximate result of Defendant's action Plaintiff was presented with the unconstitutional option of entering General Population to exist in terror, and to be assaulted or spend 6, and up to 24 months, suffering under the unconstitutionally harsh deprivations of the USP Coleman 1, and other "active" United States Penitentiary Special Housing Units. Plaintiff lost 27 days Good Conduct Time as well as privileges, to wit: CRUEL AND UNUSUAL PUNISHMENT, EQUAL PROTECTION VIOLATION, DELIBERATE INDIFFERENCE, NEGLIGENCE.

(a) Plaintiff hereby incorporates by reference all factual statements and allegations in paragraphs 8 through 65, as if fully set forth in this paragraph 68, subsection (a).

69. *FOURTH CLAIM*: Defendant Special Investigative Services Officer, by conducting an inadequate threat assessment review deemed Plaintiff as having an "unverified" threat. Defendant failed to exercise the due care and diligence required of his/her position. As a direct and proximate result of Defendant's actions Plaintiff was presented with the unconstitutional option of entering General Population to exist in terror, and to be assaulted or spending 6, and up to 24 months, suffering the unconstitutionally harsh deprivations of the USP Coleman 1, and other "active" USP Special Housing Units. Plaintiff lost 27 days Good Conduct Time as well as privileges, to wit: NEGLIGENCE, DELIBERATE INDIFFERENCE, EQUAL PROTECTION VIOLATION.

(a) Plaintiff hereby incorporates by reference all factual statements and allegations in paragraphs 8 through 65, as if fully set forth in this paragraph 69, subsection (a).

70. FIFTH CLAIM: Defendants Warden Antonelli and Captain Jones, by endorsing Defendant Unknown Special Investigative Services Officer's threat assessment of Plaintiff, failed to exercise the due care and diligence required of their supervisory positions. As a direct and proximate result of Defendants' actions, Plaintiff was presented with the unconstitutional option of entering General Population to exist in terror, and be assaulted or spending 6, and up to 24, months suffering under the harsh deprivations of USP Coleman 1, and other "active" USP Special Housing Units. Plaintiff lost 27 days Good Conduct Time as well as privileges, to wit: NEGLIGENCE, DELIBERATE INDIFFERENCE, FAILURE TO SUPERVISE, DUE PROCESS VIOLATION.

(a) Plaintiff hereby incorporates by reference all factual statements and allegations in paragraphs 8 through 65, as if fully set forth in this paragraph 70, subsection (a).

71. SIXTH CLAIM: Defendant Federal Bureau of Prisons, by providing no fair or timely process for Plaintiff to challenge Defendant Special Investigative Service Officer's threat assessment result, has denied Plaintiff due process of law. As a direct and proximate result of Defendants' actions Plaintiff has spent more than four months in USP Coleman 1 SHU, and portends to spend 6, and as many as 24, months suffering under the unconstitutionally harsh deprivations of other "active" USP SHUs, all without any timely process to challenge and or correct the erroneous S.I.S. determination, to wit:

(22)

DUE PROCESS VIOLATION, NEGLIGENCE, DELIBERATE INDIFFER-
ENCE.

   (a) Plaintiff hereby incorporates by reference all factual
   statements and allegations in paragraphs 8 through 65,
   as if fully set forth in this paragraph 71, subsection (a).

72. SEVENTH CLAIM: Defendant Federal Bureau of Prisons, by
designating Plaintiff to USP Coleman 1, an "active" USP, did
knowingly and intentionally, and or negligently, ~~failed~~ disregard
Plaintiff's health conditions and sex offender status to
place his safety and liberty in jeopardy. As a direct and
proximate result of Defendant's actions Plaintiff was presented
with the unconstitutional option of entering General Population
to exist in terror, and be assaulted or spend 6, and up to 24,
months under the unconstitutionally harsh deprivations of
the USP Coleman 1, and other "active" USP Special Housing Units.
Plaintiff has lost 27 Good Conduct Time days as well as privileges,
to wit: DELIBERATE INDIFFERENCE, NEGLIGENCE

   (a) Plaintiff hereby incorporates by reference all factual
   statements and allegations in paragraphs 8 through 65,
   as if fully set forth in this paragraph 72, subsection (a).

73. EIGHTH CLAIM: Defendants Unknown Special Investigative
Services Officer, Warden Antonelli, and Captain Jones, did
knowingly, intentionally, and with forethought conspire,
agree, and or confederate together, and with others, to cause
Plaintiff to be assaulted and suffer bodily injury. Defendants,
and each of them, knew, to a predictable certainty, Plaintiff
will be subjected to assault if he were to enter General Popu-
lation at USP Coleman 1. Yet, Defendants caused Plaintiff

(23)

to be ordered into General Population. As a direct and proximate
result of Defendants' actions Plaintiff was forced to refuse to enter
General Population. He has spent more than four months in the USP
Coleman 1 SHU and portends to remain there at least 6 months
and up to 24 months suffering the unconstitutionally harsh
deprivations of other "active" USP Special Housing Units. Plain-
tiff lost 27 days Good Conduct Time as well as privileges, to
wit: CONSPIRACY, CRUEL AND UNUSUAL PUNISHMENT, DELIBE-
RATE INDIFFERENCE, MISCONDUCT, GROSS MISCONDUCT.
   (a) Plaintiff hereby incorporates by reference all factual
     statements and allegations in paragraphs 8 through 65,
     as if fully set forth in this paragraph 73, subparagraph (a).

(24)

## V. DAMAGES

74. Plaintiff seeks the following monetary damages:
    (a) Against DEFENDANTS, and each of them, Compensatory damages in the amount of $2,500,000.00.
    (b) Against DEFENDANTS, and each of them, punitive damages in the amount of $5,000,000.00

## VI. DECLARATORY RELIEF

75. Plaintiff seeks the following declaratory relief:
    (a) An ORDER of this Court declaring Plaintiff's particular case characteristics, health, and age establish Plaintiff must be housed by the Federal Bureau of Prisons at a protective custody prison.
    (b) An ORDER of this Court declaring the Federal Bureau of Prisons' scheme to pre-plan the issuance of orders to inmates seeking protective custody at three, thirty day intervals is unconstitutional, as it violates the Fifth, Sixth, and Eighth Amendments.
    (c) An ORDER of this Court declaring the Federal Bureau of Prisons' scheme to pre-plan that "un-verified" protective custody inmates will spend at least 6, and up to 24, months in the Special Housing Unit is unconstitutional, as it violates the Fifth, Sixth, and Eighth Amendments.
    (D) An ORDER of this Court declaring the Federal Bureau of Prisons policy, de facto, or otherwise, whereby it holds sex offenders to a higher standard of showing than other, similarly situated, inmates in order to be "verified" by S.I.S. is unconstitutional, as it violates the Fourteenth

(25)

Amendment.

76. And any other relief this Court deems necessary and just.

Dated: December 27, 2021

Respectfully Submitted,

Corey Davis, Plaintiff

Pro Se
USP Coleman I
P.O. Box 1033
Coleman, Florida 33521

(26)